UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Kimberly Behr, | ) | Civil Action No.  5:21-707-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | ORDER |
| Kilolo Kijakazi, Acting Commissioner | ) | |
| of Social Security Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |

This social security matter is before the court pursuant to 28 U.S.C. § 636(c) and Local

Civil Rule 83.VII.02 (D.S.C.) for final adjudication, with the consent of the parties, of Plaintiff's

petition for judicial review. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain

judicial review of a final decision the Commissioner of Social Security ("Commissioner"), denying

her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI")

pursuant to the Social Security Act ("the Act"). Having carefully considered the parties'

submissions and the applicable law, the court reverses and remands the Commissioner's decision

for the reasons discussed herein.

I.      Relevant Background

A.      Procedural History

On September 4, 2019,[2] Plaintiff protectively filed applications for DIB and SSI alleging

she became disabled on August 15, 2019.[3] Tr. 219-31. Plaintiff's applications were denied initially

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the court substitutes Kilolo Kijakazi for Andrew Saul as Defendant in this action.

[2] Although the application summaries are dated September 12, 2019, Tr. 219-31, the Disability Determination and Transmittals reflect a filing date of September 4, 2019, Tr. 119-20.

[3] Plaintiff had previously filed a claim for DIB on September 6, 2011, that was granted by administrative law judge ("ALJ") Theresa R. Jenkins after an administrative hearing in Charlotte, North Carolina for a closed period of disability from February 14, 2010 through May 1, 2013. Tr.

on December 30, 2019, Tr. 119-20, and on reconsideration on February 28, 2020, Tr. 148-50. Plaintiff requested a hearing before an ALJ. Tr. 170-71. ALJ Jerry Peace conducted an administrative hearing on November 12, 2020 in Greenville, South Carolina, taking testimony from Plaintiff and Vocational Expert ("VE") Mark Stebnicki, PhD. Tr. 38-57. The ALJ denied Plaintiff's claim in a decision dated November 25, 2020. Tr. 17-30. On December 11, 2020, Plaintiff requested review of this decision by the Appeals Council. Tr. 215-17. On February 1, 2021 the Appeals Council sent Plaintiff a "Notice of Appeals Council Action" indicating it had denied Plaintiff's request for review of the ALJ's November 2020 decision, thus making the ALJ's decision the final decision of the Commissioner of Social Security. Tr. 1-5. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on March 11, 2021. ECF No. 1.

      B.    Plaintiff's Background

      Born in September 1964, Plaintiff was one month shy of her 55th birthday on her alleged onset date of August 15, 2019. Tr. 268. In her September 16, 2019 form Disability Report-Adult Plaintiff indicated that she was 5'3" tall and weighed 185 pounds. Tr. 272. Plaintiff indicated that she stopped working on August 1, 2019 because of her medical conditions which she listed as severe migraine headaches, neck injury, upper and lower back injury, cervical spine, nerve damage in hands, sleep problems due to pain, sleep apnea, bilateral foot pain, and left hip pain. *Id.* Plaintiff indicated that she completed the 12th grade, did not attend special education classes, and had not completed any type of specialized job training, trade or vocational school. Tr. 273. Plaintiff indicated her past relevant work ("PRW") consisted of the following jobs: teacher's assistant

---

58-70. Plaintiff filed a subsequent claim for DIB and SSI on June 12, 2015 alleging a disability beginning August 14, 2014. That claim was denied by ALJ Lloyd E. Hubler, III on December 12, 2017 after an administrative hearing held in St. Petersburg, Florida. Tr. 74-83.

(1997-2008), school food preparer (Jan. 2009-June 2009), grocery store cashier (Sept. 2012-Oct. 2013), retail merchandiser (Oct. 2013-Dec. 2015), and exceptional student education ("ESE") assistant (July 2018-Sept. 2018). *Id.*

In a January 14, 2020 Disability Report – Appeal, Plaintiff indicated changes in her medical conditions that occurred in November 2019. Tr. 297. Plaintiff noted that her "conditions are getting progressively worse" and that she had "bone spurs in neck, spinal stenosis, tingling throughout body, neuropathy in hands and feet, [and] sleep apnea." *Id.* She also indicated changes in her daily activities due to her medical conditions noting that she was "having difficulty picking things up because she drops them due to inability to grasp objects. This is causing difficulty with crocheting and crafting, which she used to enjoy. It is getting harder for her to get around as well due to the neuropathy in her feet." Tr. 300.

In a subsequent Disability Report – Appeal dated April 20, 2020 Plaintiff indicated additional changes to her medical condition that occurred in December 2019. Tr. 316. She indicated that neck, back, and hip pain affected her ability to exercise and interfered with her sleep. *Id.* She described the new medical conditions as "cervicalgia, loss of disc height C5-C7, foraminal stenosis, severe at C3-4, cervical spondylosis, disc bulges and herniation." *Id.* Changes in her daily activities were described as follows:

> Her participation in hobbies has decreased due to pain in hands. She has a hard time brushing her hair due to shoulder pain and the way the hair brushing pulls on her neck. She also drops things due to her hand pain. Severe pain is causing tiredness and loss of interest in hobbies and gatherings.

Tr. 319.

C.    Administrative Proceedings

Plaintiff appeared with counsel on November 12, 2020 in Greenville, SC before ALJ Peace for her administrative hearing. Tr. 38. VE Stebnicki also appeared and testified. *Id.* Due to the

extraordinary circumstance of the Covid-19 Pandemic the hearing was conducted telephonically with Plaintiff's consent. Tr. 40. Plaintiff's counsel noted that Plaintiff had neck surgery on October 8, 2020 and they were awaiting receipt of a requested operative report. Tr. 41. The ALJ indicated that he would not close the record until he had received and considered the report. *Id.*

      1.  Plaintiff's Testimony

In response to questions from the ALJ Plaintiff verified her address, noting that it was a house where she lived with her husband, her 27-year-old son, and her 90-year-old mother. Tr. 43. Plaintiff also confirmed her birthdate and current age of 56 years old. *Id.* Plaintiff testified that she was 5'3" tall and weighed 180 pounds, but that her normal weight was between 130 and 140 pounds. Tr. 44. Plaintiff stated that she weighed more because, due to her injuries, she has not "been able to exercise, basically, walk." *Id.* Plaintiff testified that she "graduated 12th grade,"[4] could read and write, add and subtract, is right-handed, has a driver's license and can drive. Tr. 44-45. Plaintiff stated that she has not collected unemployment but she had a Worker's Compensation case that closed in August of 2019. Tr. 45. Plaintiff testified that she was not working currently but in her last job she "worked for Pinellas County schools in Florida as a teacher assistant and teach special needs children." *Id.* Plaintiff stated that she stopped working and had to resign in April when a student tripped her causing injuries when she fell. Tr. 45-46. Plaintiff indicated that she had not looked for other work since leaving the school system. Tr. 46. Plaintiff stated that her husband is a disabled veteran and receives a monthly income and her mother, who gets Social Security, helps with the utilities. *Id.* Plaintiff stated that she also receives food stamps. *Id.*

---

[4] Plaintiff later clarified that she went to college "three or four years" off and on but she did not get a degree. Tr. 54.

Plaintiff testified that she is unable to work because she has severe migraines for which she takes medicine. Tr. 47. She stated that when she has a migraine she has to "go in a dark room where there's no noise or light. And just lay down with something on [her] head and covering [her] eyes." *Id.* Plaintiff stated that she has injuries to her neck and upper and lower back, vertigo, and severe neuropathy in her hands and feet. *Id.* Plaintiff testified that she is able to stand for 10-15 minutes before needing to sit down, and she can sit for 15-20 minutes before needing to get up. *Id.* She stated that she can walk between 5-10 minutes without taking a break, and she can lift 2-3 pounds. *Id.* Plaintiff indicated that she does not use a walker or a cane. Tr. 48. She stated she could bend over to pick something up from the floor if she is able to hold onto something for balance. *Id.* Plaintiff stated that she has had three surgeries on her left knee, and that both knees are "bone on bone" and have developed arthritis. *Id.* She confirmed that she has neuropathy in her hands and her shoulders ache. *Id.* Plaintiff stated that she has not been diagnosed with asthma, COPD, or emphysema but she has "a hard time breathing" and while she is waiting to see her doctor, the doctor prescribed an inhaler for Plaintiff to use for emergencies. Tr. 48-49.

Plaintiff stated that her mother has a "little dog" and her son has a medical service dog. Tr. 49. Plaintiff testified that she cooks most of the meals and she is "able to stand for a little bit and prepare what [she] can for about 10, 15 minutes." *Id.* She stated that she then sits to rest before resuming the preparations. She also stated that if there is something that needs to go into the oven either her husband or son will do it because she has "been dropping things, like, dishes and pans with stuff, you know, food in it." *Id.* Plaintiff stated that she is able to independently take care of her personal hygiene and dress herself, and she can do laundry if someone takes the clothes out of the washer and puts them in the dryer. Tr. 49-50. Plaintiff testified that her son is on disability with hydrocephalus, epilepsy, neuropathy, and asthma. Tr. 50. Plaintiff stated that she can do a little

cleaning—she can sit in a chair and dust or "sweep a few spots" and then she has to sit down. *Id.*
She stated that she can go shopping if she has someone to accompany her to do the lifting. *Id.*
Plaintiff stated that prior to the Covid pandemic she did not socialize with friends, but since moving
to South Carolina on occasion the family would take "a little drive to see the leaves changed or the
waterfalls but not . . . like parties or holiday stuff." *Id.* Plaintiff stated they moved to South Carolina
because the family was "ready for a change." Tr. 51. Plaintiff testified that she has a cell phone, a
Facebook account, and attends church (although not lately). *Id.* She stated that before the Covid
pandemic they would go out to eat once in a while, but not often. *Id.*

Plaintiff testified that she is still recovering from her October surgery, and she is still seeing
her doctor about her other issues. Tr. 51. Plaintiff stated that she is waiting to see her primary
doctor about her breathing issues, but she sees her neurosurgeon for her other issues. Tr. 51-52.
Plaintiff stated that the pain medications and muscle relaxers work, but they make her "sleep all
day." Tr. 52. She stated that the Gabapentin has the side effect of making her irritable in addition
to sleepiness. *Id.* Plaintiff confirmed that she does not drink alcohol or use street drugs. *Id.* Plaintiff
stated that during the day she crochets, and she enjoys doing crafts and sewing. She stated that she
likes to read and she does not really watch TV. Tr. 52-53.

Plaintiff's counsel had no questions for Plaintiff. Tr. 53.

2.  VE's Testimony

The VE classified Plaintiff's past relevant work as a special education teacher's
aide/assistant as Teacher Aide, Dictionary of Occupational Titles ("DOT") number 099.327-010,
light, with an SVP of 6. Tr. 54-55. The ALJ asked the VE to assume the following:

> [A] hypothetical individual who could lift up to 20 pounds occasionally, lift
> or carry up to 10 pounds frequently, stand or walk for approximately six hours
> of an eight-hour workday and sit for approximately six hours per eight-hour
> workday with normal breaks, who can occasionally climb ladders, ropes, or

scaffolds. Occasionally climb ramps or stairs, occasionally balance, occasionally stoop, crouch, kneel or crawl. Who's limited to frequent exposure to excessive noise. And who is limited to frequent use of moving machinery, and frequent exposure to unprotected heights.

Tr. 55. The ALJ asked if an individual with those limitations could perform Plaintiff's PRW as she performed it or as customarily performed, and the VE responded in the affirmative. *Id.* The ALJ asked the VE to assume the same elements in the first hypothetical "[e]xcept exertionally the limitation would be lifting up to 10 pounds occasionally, standing or walking for approximately two hours per eight-hour workday and sitting for approximately six hour[s] per eight-hour workday with normal breaks." *Id.* The VE testified that an individual with those limitations could not perform Plaintiff's past work as she performed it or as customarily performed. Tr. 56. The VE also testified that there would not be any transferable skills as Plaintiff "was in a very specific industry." *Id.*

Plaintiff's counsel had no questions for the VE and the hearing concluded. Tr. 56-57.

II.     Discussion

   A.     The ALJ's Findings

In his November 25, 2020 decision, the ALJ made the following findings of fact and conclusions of law:

> 1.     The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.
>
> 2.     The claimant has not engaged in substantial gainful activity since August 15, 2019, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3.     The claimant has the following severe impairments: spine disorder, dysfunction of major joints, migraines, neuropathy, and obesity (20 CFR 404.1520(c) and 416.920(c)).
>
> 4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of

the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.     After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except occasional climbing of ladders, ropes, scaffolds; occasional climbing of ramps or stairs; occasional balancing, stooping, crouching, kneeling, or crawling. She is also limited to frequent exposure to excessive noise and frequent use of moving machinery or exposure to unprotected heights.

6.     The claimant is capable of performing past relevant work as a Teacher Aide. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7.     The claimant has not been under a disability, as defined in the Social Security Act, from August 15, 2019, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

Tr. 22-24, 29-30.

    B.    Legal Framework

        1.  The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (discussing

8

considerations and noting "need for efficiency" in considering disability claims).  An examiner must consider the following:  (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[5] (4) whether such impairment prevents claimant from performing past relevant work ("PRW"); and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520, § 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis.  If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) and § 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he/she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. § 404.1520(a), (b); § 416.920(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act.  42 U.S.C. § 423(d)(5).

---

[5] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii); § 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; § 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146. n.5 (regarding burdens of proof).

2.  The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner of Social Security made after a hearing to which he was a party. . . ." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try [these cases] de novo, or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650,

653 (4th Cir. 2005); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (explaining that, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high," as it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that his conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

III.    Analysis

Plaintiff argues that (1) the ALJ improperly rejected medical opinions containing work-preclusive limitations, and (2) the ALJ failed to properly evaluate the demands of her PRW.[6] Pl.'s Br. 2, ECF No. 13.

A.  The ALJ's Evaluation of Opinion Evidence

For benefits applications filed on or after March 27, 2017 (such as Plaintiff's), the SSA has enacted substantial revisions to the regulations governing the evaluation of opinion evidence. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). Under the new regulations, ALJs need not assign an evidentiary weight to medical opinions or give special deference to treating source opinions. 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (providing that ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical

---

[6] After reviewing the Commissioner's brief, Plaintiff voluntarily withdrew this issue. Pl.'s Reply Br. 10 n. 2, ECF No. 20.

finding(s), including those from [a claimant's] medical sources").[7] Instead, ALJs consider medical opinions using five factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) the medical source's specialization; and (5) other factors, such as the medical source's familiarity with the other evidence in the claim or understanding of the disability program's policies and evidentiary requirements. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The first two factors, supportability and consistency, are the most important in determining the persuasiveness of a medical source's opinion, and the ALJ is not required to explain the consideration of the other three factors. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). The new regulations further deem certain evidence "inherently neither valuable nor persuasive." 20 C.F.R. §§ 404.1520b(c), 416.920b(c). This includes statements on issues reserved to the Commissioner such as whether a claimant is disabled, is unable to work, or is incapable of doing past relevant work. 20 C.F.R. §§ 404.1520b(c)(3), 416.920b(c)(3).

  1. Dr. Stephen Gardner

  On October 28, 2020, Dr. Gardner completed a Cervical Spine Questionnaire regarding Plaintiff. Tr. 714-18. He noted that Plaintiff's first visit with him was February 26, 2020, Tr. 718, and he was seeing her "postop spinal surgery 10/8/20 with monthly visits to follow," Tr. 714. Dr. Gardner described Plaintiff's prognosis as "fair" noting she had "some improvement arm pain with

---

[7] The new regulations define a "medical opinion" as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the abilities to perform the physical, mental, or other demands of work activity or to adapt to environmental conditions. 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). Those regulations also define a "prior administrative medical finding" as a "finding, other than the ultimate determination about whether [a claimant is] disabled, about a medical issue made by [the SSA's] Federal and State agency medical and psychological consultants at a prior level of review." 20 C.F.R. §§ 404.1513(a)(5), 416.913(a)(5).

surgery."[8] Tr. 714. He indicated Plaintiff had "chronic pain/paresthesia" and described it as cervical radiculopathy and bilateral arm pain based on findings or associated symptoms for muscle spasms, sensory changes, impaired sleep, reflex changes, drop things, and reduced grip strength. *Id.* Dr. Gardner identified other clinical findings of cervical spine with severe lordosis and moderately severe degenerative changes. Tr. 715. He opined that Plaintiff's pain or other symptoms would frequently interfere with attention and concentration to perform even simple work tasks and Plaintiff would be incapable of performing even low stress jobs. Tr. 715-16. He noted that Plaintiff would have functional limitations in sitting, standing, and walking during an eight-hour workday; she would need a job that permitted shifting positions at will; and sometimes she would need to take unscheduled breaks during the workday. Tr. 716. Dr. Gardner indicated Plaintiff could occasionally lift ten pounds or less, rarely lift 20 pounds, and never lift 50 pounds. Tr. 717. He indicated Plaintiff could occasionally look down, turn her head to the right or left, and hold her head in a static position, but that she could rarely look up. *Id.* He was unaware of Plaintiff's ability to perform other postural movements such as twisting, stooping, crouching, squatting, or climbing ladders and stairs. *Id.* He noted that Plaintiff had significant limitations with reaching, handling, and fingering and indicated that during a workday she could use her hands to grasp and turn objects 10%, use her fingers for fine manipulations 10%, and could perform no reaching. *Id.* Dr. Gardner also indicated Plaintiff's impairments would likely produce more bad days than good days, and she would average more than four days per month being absent from

---

[8] Dr. Gardner's handwriting is somewhat unclear. The undersigned reads the prognosis note as "some improvement arm pain with surgery" but acknowledges that Plaintiff reads the note as "some persistent arm pain with surgery." Pl.'s Br. 22. Regardless, Dr. Gardner notes that Plaintiff's prognosis is "Fair." Tr. 714.

work. *Id.* Noting that Plaintiff's first visit with him was in February 2020, he was unable to say if she had the listed conditions or limitations as early as August 15, 2019. Tr. 718.

a. The ALJ's Consideration of Dr. Gardner's Opinions

The ALJ considered Dr. Gardner's October 28, 2020 medical opinion and made the following determination:

> I considered the medical opinion from the claimant's neurosurgeon, Stephen Gardner, M.D., regarding the claimant's cervical spine impairment, but find it unpersuasive (C20F). Dr. Gardner's opinions, especially relating to the claimant's ability to sit, stand, walk, lift, carry, and perform fine and gross manipulations with her hands is not supported by or consistent with the longitudinal record. In particular, I note generally normal findings on physical examination, including full strength and range of motion of the hands and wrists, no tenderness, normal sensation in the bilateral upper and lower extremities, normal pulses, normal coordination, normal strength, and no cranial nerve deficit, with only mild positive findings such as tenderness and decreased range of motion (C18F/3-4; C19F/5). Although the nerve conduction study showed a diffuse sensory axonal and demyelinating peripheral neuropathy, as well as a chronic right C7 radiculopathy, the claimant also recently underwent cervical spine surgery, which also suggests that Dr. Gardner's opinion is speculative, as well as not consistent with the longitudinal record (17F/9).

Tr. 28.

b. Discussion

Plaintiff asserts the ALJ's findings are unreasonable as the ALJ failed to reconcile conflicting evidence, the ALJ improperly interpreted the objective diagnostic evidence, and given Plaintiff's recent surgery the ALJ failed to consider whether she would have been disabled for a closed period. Pl.'s Br. 24-25. The Commissioner argues that "the ALJ reasonably found that Dr. Gardner's medical opinion was unpersuasive." Def.'s Br. 12. The Commissioner contends that in finding Dr. Gardner's opinion was unsupported by or inconsistent with the longitudinal record he specifically referred to his own treatment notes and those of Dr. Moroski. *Id.* On reply Plaintiff asserts that the ALJ's "general conclusory finding" is insufficient and the "ALJ did not actually reconcile the normal findings with the abundant abnormal findings within the same records

14

including instances of abnormal gait, spasms, and decreased sensation." Pl.'s Reply Br. 3. Plaintiff contends the Commissioner is engaging in "impermissible post hoc rationale." *Id.* at 4.

As noted by the Commissioner, the ALJ cited to two records to support his assessment that the record contained "generally normal findings on physical examination." Tr. 28. These two records include a September 24, 2020 Progress Note from Dr. Nathan Michael Moroski and a February 26, 2020 Progress Note from Dr. Gardner. The ALJ states these records show mostly normal findings on examination "with only mild positive findings such as tenderness and decreased range of motion (C18F/3-4; C19F/5)." Tr. 28.

At the February 26, 2020 visit with Dr. Gardner Plaintiff complained of chronic neck pain radiating to her left shoulder. Tr. 692. On physical examination Dr. Gardner noted normal range of motion and no tenderness or pain in her right shoulder, but noted that Plaintiff exhibited decreased range of motion, tenderness and pain in her left shoulder. Tr. 693. He also indicated Plaintiff had decreased range of motion, tenderness and pain in her cervical back, although her coordination and gait were normal. *Id.* Dr. Gardner noted the results of a December 19, 2019 MRI that showed "C5-6 reverse lordosis, early degenerative disc changes. C5-6, C6-7 minor central disc osteophyte. C5-6, C6-7 mild bilateral foraminal stenosis. No intramedullary spinal cord change." *Id.* Dr. Gardner explained to Plaintiff that "her cervical MRI shows degenerative discs, which causes neck pain" and ordered "an EMG/NCV of the left upper extremity to evaluate chronic vs acute radiculopathy." *Id.*

At her September 24, 2020 visit with Dr. Moroski Plaintiff complained of bilateral hand pain and weakness. Tr. 667-70. The ALJ suggests this record supports normal findings. Indeed, Dr. Moroski's physical exam notes indicate, among other findings, that Plaintiff had normal gait and she had no tenderness, intact sensation, full range of motion, and full strength in her bilateral

upper extremities. Tr. 670. However, in this same record Dr. Moroski discussed Plaintiff's EMG and noted that there was "incidental chronic right C7 radiculopathy" and Plaintiff's "pain could be myofascial and/or vascular and related processes such as arthritis or fibromyalgia or PAD [peripheral arterial disease]." *Id.* He recommended clinical correlation, and close follow-up with neurology, but indicated surgical intervention was not needed.

The ALJ also refers to the nerve conduction study, but he notes that Plaintiff recently underwent cervical spine surgery and stated this "suggests that Dr. Gardner's opinion is speculative" as well as inconsistent with the longitudinal record. Tr. 28 (citing exhibit 17F/9, the July 28, 2020 EMG/NCV study found at Tr. 664).

As a counter to the ALJ's argument that the longitudinal records show generally normal findings, Plaintiff cites to several other records that the ALJ did not consider. Pl.'s Br. 24 (citing Tr. 48, 466, 471, 479, 539, 565, 574, 619, 641). These records include an April 25, 2019 report indicating palpable spasm and tenderness in the left trapezius and paracervical muscles of the cervical spine, the paraspinal muscles of the thoracic spine, and in the left-sided lower lumbar paraspinal muscles with painful range of motion in extension, Tr. 418; a May 20, 2019 assessment, a May 30, 2019 assessment, and a June 5, 2019 assessment indicating Plaintiff was unable to perform sustained bending, repetitive squatting, and only partial overhead reaching with her left upper extremity, Tr. 466, 471, 479; and a March 25, 2019 pain management note indicating cervical and joint pain on palpation, Tr. 539. These records also include a June 2, 2020 Progress Note from Dr. Moroski, Tr. 574, a July 17, 2020 Progress Note of neurologist Dr. Jerry Sherrill, Tr. 565, and an August 4, 2020 and a September 1, 2020 Progress Note from a neurology nurse practitioner, Tr. 619 and 641, indicating Plaintiff had problems with an abnormal gait and with joint swelling. Plaintiff also argues that the ALJ's notation that Dr. Gardner's opinion is

speculative because of Plaintiff's recent surgery is faulty because it was not clear at the time of the hearing that Plaintiff's condition had improved. Pl.'s Br. 25.

The ALJ cited to only two records to support his finding that Dr. Gardner's opinion was unpersuasive or inconsistent with the longitudinal record. There is no indication the ALJ considered other records documenting abnormal findings regarding Plaintiff's medical condition. Furthermore, the ALJ does not explain how Dr. Gardner's October 28, 2020 post-op opinion is speculative. Dr. Gardner was providing an opinion of Plaintiff's prognosis and functionality 20 days after surgery. Tr. 714. Nor does the ALJ address whether Dr. Gardner's opinion is consistent with Plaintiff's November 12, 2020 hearing testimony, roughly one month after surgery, regarding her symptoms and limitations.

It is well-settled that an ALJ "'must build an accurate and logical bridge from the evidence to his conclusion.'" *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). Here, it is unclear from the ALJ's discussion whether he considered evidence that supported Dr. Gardner's opinion. Further discussion is both warranted and required. *See Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 663 (4th Cir. 2017) ("[T]he dispute here arises from a problem that has become all too common among administrative decisions challenged in this court—a problem decision makers could avoid by following the admonition they have no doubt heard since their grade-school math classes: Show your work."). On remand, the ALJ's evaluation of consistency should include a discussion of other findings in the record, not just those deemed inconsistent with Dr. Gardner's opinion. Furthermore, because the ALJ raised the speculative nature of the opinion as a contention regarding its persuasiveness it may be beneficial to recontact Dr. Gardner or to consider, as Plaintiff suggests, a closed period of disability.

2.  Workers' Compensation Opinions

The administrative record contains six evaluations of Plaintiff's condition in 2019 completed by physicians on the Florida Workers' Compensation Uniform Medical Treatment/Status Reporting Form. Tr. 746-57. Each of the forms contains a section labeled "Functional Limitations and Restrictions" and the evaluator is to determine if the worker a) has no functional limitations or restrictions; b) has functional limitations and restrictions of such severity that he/she cannot perform activities, even at the sedentary level; or c) may return to activities as long as he/she adheres to the identified functional limitations and restrictions. Tr. 747. All of Plaintiff's evaluations indicate Plaintiff may return to activities with limitations and restrictions. The first evaluation, dated April 15, 2019, contained several functional limitations including no forward bending at the waist, limit carrying to 10 pounds, limit lifting floor-to-waist to 10 pounds, limit lifting waist-to-overhead to 10 pounds, limit pushing and pulling to 20 pounds, no reaching overhead or below knees, and no twisting. Tr. 747. The report indicated Plaintiff's anticipated maximum medical improvement ("MMI") could not yet be determined. *Id.* The second evaluation on April 19, 2019 limited forward bending at the waist, limited carrying and lifting to 10 pounds, pushing and pulling to 20 pounds, and no repetitive twisting. Tr. 749. It also indicated that the anticipated MMI date could not be determined. *Id.* The third evaluation on April 25, 2019 provided for no forward bending at the waist, no carrying, no climbing stairs or ladders, no lifting floor-to-waist or waist-to-overhead, no pulling or pushing, seating position preferred, and no squatting, standing, twisting, or walking. Tr. 751. This report indicated that Plaintiff had not achieved MMI. *Id.* The fourth evaluation was on April 29, 2019. Tr. 752. This report limited Plaintiff's functional activities to no forward bending at the waist, no carrying, no climbing stairs or ladders, no kneeling, no lifting, no pulling or pushing, seated position preferred, and no squatting, standing, twisting, or

walking. Tr. 753. It indicated the anticipated MMI date could not be determined. *Id.* The fifth evaluation, dated May 7, 2019, limited Plaintiff's forward bending at the waist, limited lifting floor-to-waist and waist-to-overhead to 10 pounds, limited pulling and pushing to 20 pounds, and indicated "Seated position only." Tr. 755. The report indicated Plaintiff had not reached MMI. *Id.* The sixth, and final, evaluation was completed on June 12, 2019. Tr. 756. It recommended consultation with or referral to a specialist for orthopedic care for both hands and to a "spine specialist for C and L spine" and transferred Plaintiff's care. *Id.* This evaluation limited carrying and lifting to 10 pounds, limited pulling and pushing to 20 pounds, seating position preferred, and noted "Office duties only." Tr. 757. The report indicated that Plaintiff's MMI could not be determined. *Id.*

a.   The ALJ's Consideration of the Workers' Compensation Opinions

The ALJ noted that he considered the "statements regarding the claimant's functional limitations, prepared in the context of a workers' compensation claim between April and June 2019" but found them not persuasive. Tr. 28. The ALJ noted that these types of medical reports are typically adversarial in nature, and the definition of disability is not the same as in a social security disability case. *Id.* The ALJ noted that "[w]orkers' compensation cases look only at the claimant's ability to return to the job being performed at the time of the injury." *Id.* The ALJ also found that because the opinions noted Plaintiff was not at MMI, they "are not fully supported by or consistent with the longitudinal record." *Id.*

b.   Discussion

Plaintiff argues that the ALJ's findings are "unreasonable" and the "fact that workers' compensation claims are adversarial does not mean that the opined limitations are incredible." Pl.'s Br. 27. Plaintiff contends that the fact that she had not reached MMI is "consistent with Dr.

Gardner's later opinions showing continued limitation." *Id.* at 28. Plaintiff seeks remand for a proper evaluation of this evidence. *Id.* The Commissioner contends the ALJ "reasonably found these forms unpersuasive" noting the opinions were temporary assessments addressing Plaintiff's complaints following her April 2019 injury and her ability to work. Def.'s Br. 18. Defendant notes that the ALJ did not say that the opinions were incredible or that they did not include specific functional limitations, but merely noted that the "differing context was one factor that made the opinions less persuasive." *Id.* at 19.

In claims filed on or after March 27, 2017, ALJs are not required to provide any analysis in their decision about a decision made by any other governmental agency or a nongovernmental entity about whether a claimant is disabled, blind, employable, or entitled to any benefits. However, they are required to consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision received as evidence. 20 C.F.R. §§ 404.1504 and 416.904. Here the court finds that, despite finding them unpersuasive, the ALJ adequately considered the opinions in the workers' compensation evaluations. Accordingly, remand is not required on this issue.

IV.    Conclusion

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court finds remand is warranted. Based on the foregoing, the court hereby reverses the decision of the Commissioner pursuant to Sentence Four of 42 U.S.C. § 405(g) and remands the matter to the Commissioner for further proceedings consistent with this order.

IT IS SO ORDERED.

August 25, 2022                           Kaymani D. West
Florence, South Carolina                  United States Magistrate Judge